## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ROBERT FLEMING,**

      **Plaintiff,**

**vs.**                                                          **Case No.: 8:11-CV-2578-T-27EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security Administration,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

    Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

    After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends that the Commissioner's decision be affirmed and this case dismissed.[1]

    In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence

_____

[1] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).   If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On February 17, 2009, Plaintiff filed an application for DIB, alleging disability beginning November 30, 2005, later amended to February 6, 2007, with a date last insured ("DLI") of December 31, 2008. (T 99, 153, 158)  Plaintiff's application was denied initially and upon reconsideration, and an administrative hearing was held on September 1, 2010. (T 101, 109, 34) Forty-seven years old at the time of the ALJ's decision, Plaintiff has a high school education and past relevant work experience as cashier and massage therapist.  (T 28, 85, 153, 179, 226)

On October 7, 2010, an ALJ denied Plaintiff's application.  (T 28)   Although Plaintiff's severe impairments included history of traumatic brain injury, history of fibromyalgia, history of mild degenerative disc disease of the cervical and lumbar spines, and history of deep vein thrombosis ("DVT"), these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1.  (T 20-21)  Despite these impairments, Plaintiff was

2

determined to have a residual functional capacity ("RFC") for less than the full range of light work. (T 21)  The ALJ found that Plaintiff could walk or stand at least two hours and sit about six hours in an eight-hour workday, frequently carry ten pounds, occasionally carry twenty pounds, and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. (Id.) The ALJ  limited Plaintiff to a "non-fast paced" and flexible work schedule. (Id.)  Additionally, Plaintiff must avoid climbing ladders, ropes, or scaffolds, concentrated exposure to extremely cold or hot environments, slippery and uneven surfaces, and moderate exposure to hazardous machinery and heights.  (Id.)

Although Plaintiff was unable to perform any past relevant work as a cashier or massage therapist, the ALJ found Plaintiff capable of performing jobs available in significant numbers in the national economy, such as a gate guard, laundry sorter, and price marker. (T 27-28)  Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period.  (T 28)  On September 23, 2011, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (T 1)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

Plaintiff asserts that the Appeals Council failed to grant review of the ALJ's decision based on new and material evidence and that remand is appropriate for consideration of additional evidence submitted to the district court.  Further, Plaintiff contends that the ALJ erred by: (1) failing to properly evaluate the effect of Plaintiff's impairments; (2) improperly assigning weight to the opinions of treating physicians and non-examining consultants; (3) partially discrediting Plaintiff's credibility; (4) failing to describe all of Plaintiff's impairments in the hypothetical to the vocational

expert ("VE"); and (5) failing to afford Plaintiff a full and fair hearing.[2]  A review of the record is necessary as these issues implicate an extensive medical record.

As a result of an automobile accident in 1986, Plaintiff suffered a traumatic brain injury and spent two and a half weeks in a coma. (T 49, 52)

On May 19, 2004,  Garcia J. DeSousa, M.D., P.A. ("Dr. DeSousa") diagnosed Plaintiff with right hand weakness and abnormal function in his right hand. (T 287)   Dr. DeSousa observed that Plaintiff had some difficulty holding objects in his right hand and he could not perform certain functions with his right hand, such as gripping. (Id.) Magnetic resonance imaging ("MRI") of Plaintiff's brain appeared unremarkable. (Id.)  In March 2005, Plaintiff was injured in another automobile accident when a vehicle ran a red light and hit Plaintiff's vehicle on the driver's side. (T 49)

On February 27, 2006, Dr. DeSousa examined Plaintiff who complained of pain in his neck, back, hips, left leg, right arm, and right hand. (T 297) Dr. DeSousa observed that Plaintiff had problems with his right hand and diagnosed right upper extremity pain likely secondary to cervical radiculopathy and a cervical sprain injury. (Id.)  On March 1, 2006, an MRI of Plaintiff's brain revealed "cerebral cortical atrophy, somewhat advanced for age, borderline ventriculomegaly, which appeared proportionate, and mild cerebellar atrophy." (T 299, 913)  An MRI of the cervical spine was abnormal with straightening of the curvature, spondylotic changes most pronounced at C3-4, evidence of bilateral forminal narrowing, slightly worse on the left than the right. (T 299, 914-15) Dr. DeSousa recommended rehabilitation with exercise therapy. (T 299)

---

[2]  The issues are addressed according to the sequential review process for disability claims, not in the order presented in Plaintiff's memorandum of law.

On September 15, 2006, Dr. DeSousa observed that Plaintiff had slight dexterity problems with his right hand, but his grip was normal, his walking was normal, and his gait was unremarkable. (T 293) On September 29, 2006, an MRI of Plaintiff's right hand showed mild tenosynovitis of the extensor pollicis longus at the wrist joint. (T 295) There was no diffuse marrow edema or fracture, the flexor and extensor tendons were otherwise intact, and the intrinsic muscles of the hand were normal. (Id.) There was no focal fluid collections or masses within the soft tissues. (Id.) An MRI of his right forearm was negative. (T 296)  On October 3, 2006, Dr. DeSousa observed that Plaintiff's right hand "is not quite functional" and he had difficulty with flexion. (T 290) An electromyography ("EMG") of his right upper extremity was unremarkable and nerve conduction studies indicated carpal tunnel syndrome. (Id.) Dr. DeSousa recommended that Plaintiff be seen by a hand specialist. (Id.)

Steven Moss, M.D. ("Dr. Moss"), an orthopedic surgeon, treated Plaintiff from November 2006 through December 2009. (T 563-885)  Plaintiff occasionally complained of constant pain of an eight or nine on a scale of one to ten caused by sitting, standing, and walking.  (Id.) Dr. Moss reported on most occasions that Plaintiff's cervical and lumbar spines had a 100% range of motion, but occasionally reported a range of motion of 80% or 90%.  (Id.) Dr. Moss sometimes indicated that Plaintiff had myofascial tenderness of paracervical, suprascapular notch tenderness of the paralumbar, and tenderness of the lumbosacral midline and sacroiliac joints. (Id.) Dr. Moss noted Plaintiff's gait was antalgic, but Plaintiff had intact deep tendon reflexes in his arms and legs and could heel, tiptoe, and tandem walk without difficulty on most visits. (Id.) Dr. Moss treated Plaintiff with Depo Medrol 40 mg/Lidocaine 1% injections. (Id.)

On April 1, 2009, Dr. Moss completed a physical RFC questionnaire indicating that the

description of symptoms and limitations applied beginning February 6, 2007. (T 491)  Dr. Moss diagnosed Plaintiff with head trauma from automobile accidents in January 1986 and January 2005 causing left side paralysis, pain, and stiffness with treatment including muscle relaxers, Percocet causing drowsiness, and Ativan. (T 488)   He opined that Plaintiff also suffers from depression, anxiety, somatoform disorder, and psychological factors affecting his physical condition. (T 489) When asked how often Plaintiff's pain or other symptoms are severe enough to interfere with his attention and concentration needed to perform simple work tasks, Dr. Moss marked "constantly." (Id.)  Dr. Moss indicated that Plaintiff is incapable of low stress jobs due to his difficulty with movement and inability to ambulate, but that Plaintiff can sit for twenty minutes without interruption and can sit and stand or walk for less than two hours in an eight-hour workday, but he cannot walk a block or stand for any amount of time.  (Id.)  If engaging in occasional standing or walking, Plaintiff must use an assistive device. (Id.) With prolonged sitting, Plaintiff's legs must be elevated with two to three pillows. (Id.) Plaintiff can never look up or down, turn his head right or left, twist, stoop, bend, crouch, squat, or climb ladders or stairs. (T 490-91)

John DeCosmo, D.O. ("Dr. DeCosmo") treated Plaintiff on September 4, 2008 and September 11, 2008, noting point tenderness and muscle spasms in the cervical, thoracic, and lumbar paraspinal muscles. (T 302-07) On September 4, 2008, Plaintiff complained of a tingling sensation intermittently throughout his entire body in association with meals or after meals, but he had no other symptoms except some fatigue. (T 302)  Plaintiff reported having cortisone injections one or two times per month for his body being "locked up" after the 2005 automobile accident. (Id.)  On September 11, 2008, Plaintiff complained of pulsing in the right side of his body, tightness in the left side of his body due to imbalance of postural muscles, a tilted pelvis, weakness, lightheadedness,

and an inability to walk. (T 305)  Plaintiff reported that these symptoms "have been off and on" for four to five weeks. (Id.)

In December 2008, Plaintiff fell and hit the back of his head. (T 425)  On February 2, 2009, Plaintiff went to St. Petersburg General Hospital where Stephen Mitchell, D.O. ("Dr. Mitchell") diagnosed Plaintiff with DVT.  (T 326, 333)  On February 11, 2009, Plaintiff arrived at Oak Hill Hospital complaining to Dr. Mukesh Mehta, M.D. ("Dr. Mehta") of shortness of breath, headache, bilateral hip pain, and swelling of the lower extremities, the left extremity more swollen than the right. (T 336-37)  Dr. Mehta noted that Plaintiff has acute DVT, a history of pulmonary embolism ("PE"), and a history of a recent fall. (T 336)  An MRI of the brain revealed no acute intracranial abnormalities, but there was "a tiny old cortical infarction seen in the right parietal lobe near convexity without contrast enhancement or corresponding diffusion abnormality." (T 343, 356)  An MRI of Plaintiff's pelvis and bilateral hips showed no fracture or dislocation, no significant hip joint space narrowing, and no acute abnormalities. (T 338, 356, 359)  An MRI of the cervical spine showed very mild degenerative joint disease ("DJD"). (T 358)  An MRI of the lumbar spine revealed straightening of the lumbar spine secondary to spasm or positioning or ligamentous injury and mild disc space narrowing at L5-S1. (T 360)  A Doppler venous study confirmed that Plaintiff had DVT on the left side, and Plaintiff was admitted for anticoagulation treatment. (T 339, 347, 361)

Upon discharge on February 17, 2009, the Dr. Mehta observed that Plaintiff had bilateral extensive PE and DVT on the left side with swelling, redness, and erythema, but he was not short of breath nor had any pleuritic chest pain. (T 347)  Dr. Mehta started Plaintiff on a walker. (Id.) After treatment, Plaintiff was ambulatory, was not short of breath, and had no complaints. (Id.)

On February 24, 2009, Jose Francisco Luciano, M.D. ("Dr. Luciano") diagnosed Plaintiff

with organic brain injury, DVT, and PE and observed that Plaintiff seemed very confused, had to be redirected after every question, and had some difficulty walking. (T 363-64, 428-29)   On February 25, 2009, Plaintiff underwent an operation to treat his left lower extremity DVT and PE. (T 369)  On March 1, 2009, Juan Pedro Casadevalls, M.D. ("Dr. Casadevalls") diagnosed Plaintiff with PE on Coumadin, anemia, anxiety, and chronic ataxia. (T 375)

On March 30, 2009, Dr. DeSousa reported increased tone and slight spasticity in the lower extremities and an impaired gait with the left foot turned inward. (T 427) He diagnosed left lower extremity weakness, remote history of head injury with brain contusion, history of recurrent DVTs, and status post IVC filter placement. (Id.) Dr. DeSousa opined that Plaintiff needed extensive rehabilitation and physical therapy to improve his gait. (Id.)  An April 9, 2009 MRI of the thoracic spine revealed a small left central disk protrusion at T3-T4 and a moderate sized right central disc protrusion, both contributing to mild central canal stenosis. (T 407, 412)  An MRI of the lumbar spine showed mild central canal stenosis due to a moderate-sized central to left central disc extrusion at L4-L5 and L5-S1 levels. (T 407, 413)  On April 14, 2009, Dr. DeSousa noted that Plaintiff used an assistive device and had a very peculiar gait with his left foot turning inward. (T 407)

On June 23, 2009, Robert Hauser, M.D. ("Dr. Hauser") diagnosed Plaintiff with post traumatic dystonia, mostly in the distal left lower extremity, and with right upper extremity dystonia that impairs his fine coordinated movements and ability to write.[3] (T 472)  Dr. Hauser opined that Plaintiff's dystonia progressed over time following his head injury. (Id.)   Dr. Hauser prescribed

---

[3]   Dystonia means "dyskinetic movements due to disordered tonicity of muscle; cf. dyskinesia." Berry v. Astrue, No. 5:12-CV-39-CAS, 2012 WL 6135839, at *11 n.8 (N.D. Fla. Dec. 10, 2012) (citing Dorland's Illustrated Med. Dictionary 582 (32nd ed. 2012)).  Dyskinesia means "distortion or impairment of voluntary movement, as in tic, spasm, or myoclonus." Id.

medication and Botox injections. (T 469, 472)  Dr. Hauser also observed Plaintiff's gait consisted of mildly shortened strides and stated that although Plaintiff feels his left leg turning inward, he puts his foot in a more normal position. (T 472)  On August 17, 2009, Dr. Hauser similarly noted that Plaintiff's gait consisted of strides of mildly shortened length on a narrow base. (T 467)

On March 16, 2009, Kevin Cook ("Mr. Cook"), an non-examining single decision maker ("SDM"), completed a physical RFC assessment applicable to Plaintiff's period of alleged disability. (T 382-89) Mr. Cook opined that Plaintiff could lift and carry fifty pounds occasionally, lift twenty-five pounds frequently, sit for six hours in an eight-hour workday, and push and pull without limitation. (T 383) Although noting that Plaintiff had left leg DVT, Mr. Cook based his conclusions on Plaintiff's ability to walk independently with an antalgic gait, a normal range of motion throughout the record, a normal motor strength, no sensory deficits, and some left leg edema. (Id.) He indicated that Plaintiff could occasionally climb ladders, ropes, and scaffolds and balance and frequently climb ramps and stairs, kneel, crouch, and crawl. (T 384)

On June 29, 2009, Murthy Ravipati, M.D. ("Dr. Ravipati") completed a physical RFC assessment applicable to Plaintiff's period of alleged disability noting a diagnosis of DVT, PE, and history of traumatic bran injury. (T 459-66)  He opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and walk for two hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push and pull without limitation. (T 460)  Dr. Ravipati found that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but could never climb ladders, ropes, and scaffolds. (T 461)  Additionally, Dr. Ravipati recommended that Plaintiff should avoid concentrated exposure to extreme heat and cold and avoid moderate exposure to hazards such as machinery and heights. (T 463)  While acknowledging that

9

Plaintiff experienced problems with his left hip causing gait disturbance such as his left foot turning inwards, left leg swelling, and used an assistive device to ambulate in April 2009, Dr. Ravipati noted that there was no indication of left leg weakness from the 2006 records. (T 461)

## I.      Additional Evidence Submitted to the Appeals Council

Plaintiff submits that the Appeals Council should have granted review of the ALJ's decision based on additional evidence of Plaintiff's cognitive, psychological, and motor deficits. The Commissioner asserts that the additional evidence is not material and does not warrant review.

When evidence is submitted for the first time to the Appeals Council, that new evidence becomes part of the administrative record. Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1067 (11th Cir. 1994).   The Appeals Council considers the entire record, including the new, material, and chronologically relevant evidence, and will review the ALJ's decision if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007).

The district court also considers the entire record, including the evidence submitted to the Appeals Council, to determine "whether the new evidence renders the denial of benefits erroneous." Id. at 1262.  To obtain a sentence four remand, a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) the evidence relates back to the time period on or before the date of the ALJ's decision. Smith v. Soc. Sec. Admin., 272 F. App'x 789, 802-03 (11th Cir. 2008) (per curiam) (unpublished) (citations omitted).

The Appeals Council considered Plaintiff's request for review and newly submitted evidence, but declined to alter the decision of the ALJ because the additional information did not

provide a basis for changing the ALJ's decision. (T 1-2)    The additional records submitted to the Appeals Council include a 1988 neuropsychological evaluation by Alan Lewis, Ph.D. ("Dr. Alan Lewis"), a 2010 psychological evaluation by Michael Eastridge, Ph.D. ("Dr. Eastridge"), and a 2011 opinion by Dr. Hauser.

On September 7, 1988, Dr. Lewis opined that Plaintiff suffers from a variety of cognitive, emotional, and motor deficits relating to the 1986 automobile accident. (T 909-11)  He diagnosed organic personality syndrome, explosive type, and narcissistic personality disorder. (Id.)  Dr. Lewis noted that Plaintiff would experience difficulty in learning new tasks and would need to devote a great deal of effort to acquiring and integrating new information. (Id.)

On December 16, 2010, Dr. Eastridge diagnosed Plaintiff with cognitive disorder, not otherwise specified; Parkinson's disease, by history; anxiety disorder, not otherwise specified, with Agoraphobia; depressive disorder, not otherwise specified; organic personality disorder with passive avoidant features; severe stress; and a GAF score of 40. (T 917)  He observed that Plaintiff's motor problems prevent effective ambulation and Plaintiff had great difficulty ambulating with a walker. (T 920, 926)  Plaintiff's fine motor problems result in extremely slow performance of tasks involving use of his hands.  (T 926)  Dr. Eastridge also reported that Plaintiff "talks incessantly, talking over others, and reverting back to the same topic, over and over," making him difficult to supervise and precluding him from working with the public, customers, and coworkers. (Id.)  Given Plaintiff's history, Dr. Eastridge found the pattern of deterioration in his cognitive function predictable and that Plaintiff worked as a massage therapist until his condition deteriorated in 2005 and was truly unable to work anymore. (Id.)  Dr. Eastridge noted that if Plaintiff returned to work, he would experience episodes of deterioration due to mental symptoms. (Id.)

11

On December 22, 2010, Dr. Eastridge stated that Plaintiff's condition existed since 2007, but he was not "sure about [the] severity." (T 943)  He emphasized that Plaintiff's work history suggests that Plaintiff would work if he could. (Id.)  When asked if Plaintiff is a "malingerer," Dr. Eastridge explained that Plaintiff will say that he cannot do things which he can do, such as draw, and this is an executive dysfunction symptom. (Id.)  He stated that it looks like malingering, but it is not. (Id.)

Also subsequent to the hearing, on December 22, 2010, Plaintiff's counsel asked Dr. Hauser to review the reports from Dr. Lewis and Dr. Eastridge and to render an opinion regarding the onset of his June 2009 findings. (T 939)  On January 24, 2011, the form provided by Plaintiff's counsel asked Dr. Hauser if his clinical findings and diagnosis of June 22, 2009 existed at least as of December 31, 2008. (T 940)  Dr. Hauser responded "Yes" without explanation. (Id.)

These reports submitted for the first time to the Appeals Council do not provide a basis for review. Dr. Lewis's 1988 evaluation is not relevant as it does not indicate that Plaintiff had limitations during the time period of February 6, 2007 to December 31, 2008.  This evaluation is too remote in time from the relevant period of disability. Dr. Eastridge's report also does not warrant remand. Dr. Eastridge did not examine Plaintiff until December 16, 2010, and as a one-time examiner, Dr. Eastridge's opinion is not entitled to great weight. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004) (per curiam).  Additionally, although Dr. Eastridge stated that Plaintiff's condition existed since 2007, he was not sure about the severity. (T 943)  See Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991) (finding that where a treating physician expresses uncertainty as to the accuracy of his findings, the ALJ has no obligation to defer to the report).

As for Dr. Hauser's 2011 opinion, the ALJ noted that in June 2009 Dr. Hauser diagnosed

12

Plaintiff with dystonia. (T 21) However, the ALJ found that Plaintiff's condition did not cause more than minimal limitations in basic work related activities and did not exist during the period at issue. (Id.) Dr. Hauser's opinion shows that condition existed during the period at issue.  However, Dr. Hauser's conclusory response without any explanation does not show that Plaintiff's condition causes more than minimal limitations in basic work activities.  See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (noting that a conclusory opinion is not entitled to controlling weight). Therefore, Dr. Hauser's 2011 opinion also does not provide a basis for review.

Accordingly, the Appeals Council properly denied Plaintiff's request for review.

## II.   Additional Evidence Submitted to the District Court

Asserting that this Court should remand for consideration of additional evidence under sentence six of 42 U.S.C. 405(g), Plaintiff submits  hospital records ("new hospital records") from Dr. Mehta at Oak Hill Hospital where Plaintiff presented with swelling of his left lower extremity on January 30, 2009. (Dkt. 8 Ex. 1) Plaintiff states that the new hospital records were present at the time of the hearing, and Plaintiff summarized the new hospital records in a brief to the ALJ (T 234) and in a brief to the Appeals Council (T 259), but the new hospital records are not in the SSA's transcript.

"Sentence six of section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court." Ingram, 496 F.3d at 1267.  To obtain a sentence-six remand, a claimant must establish that: (1) new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that a reasonable probability exists that it would change the administrative results; and (3) good cause for failure to submit the evidence at the administrative level.  Keeton, 21 F.3d 1064 at 1068 (11th Cir.

1994) (citations omitted).

In the new hospital records from January 30, 2009, Dr. Mehta reviewed Plaintiff's medical history and noted Plaintiff's brain damage caused him to have difficulties with his very fine motor skills and synthesizing the body's sensations. (Dkt. 8 Ex. 1)   Dr. Mehta observed that Plaintiff has a tendency to talk continuously and incessantly, has impaired higher functions to some degree, and could not give a detailed account of his history.  (Id.)  Dr. Mehta noted that Plaintiff has an unsteady gait, some shortness of breath, insomnia, significant muscle spasms, and was positive for some memory impairment.  (Id.) After Plaintiff presented with swelling in the left lower extremity, a Doppler venous study confirmed that Plaintiff has an acute DVT of the left superficial and popliteal vein, and he was admitted for anticoagulation.  (Id.)

While the SSA's transcript does not contain the new hospital records, it does contain other records from Plaintiff's stay at Oak Hill Hospital from Dr. Mehta. (T 347-48)  Plaintiff fails to provide any reason for his failure to incorporate the new hospital records into the record at the administrative level.  Thus, Plaintiff is not entitled to a sentence six remand.

## III.    Consideration of Plaintiff's Impairments Individually and in Combination

Plaintiff argues that the ALJ failed to properly consider his impairments individually and in combination, specifically the limitations from his dystonia, cognitive dysfunction, fibromyalgia, and complaints of pain.

An ALJ's specific statement that a claimant does not have an "impairment or combination of impairments that meet or equal a listed impairment" sufficiently demonstrates that the ALJ considered the cumulative effects of all of a claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (per curiam).  Although Plaintiff has a severe impairment of mild

14

mental retardation, the ALJ found that Plaintiff does not have "an impairment or combination of impairments" that meet or medically equal a listing. (T 21)   Therefore, the ALJ appropriately evaluated Plaintiff's impairments in combination.   See Wilson, 284 F.3d at 1224-25.

Plaintiff contends that the ALJ did not discuss certain evidence. However, the ALJ need not specifically refer to every piece of evidence, so long as the decision reflects sufficient consideration of the claimant's condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).   The ALJ stated on several occasions that he considered the entire record in reaching his conclusions. (T 18, 20-21)   He "thoroughly evaluated the medical file in arriving at these findings" (T 20), and he determined Plaintiff's RFC "[a]fter careful consideration of the entire record." (T 21) Moreover, although the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice to warrant remand for further development of the record.   Robinson v. Astrue, 365 F. App'x 993, 995 (11th Cir. 2010) (per curiam) (unpublished) (citing Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995)).   Plaintiff has made no such showing here.

## 1.   Dystonia

After observing that in June 2009 Dr. Hauser diagnosed Plaintiff with dystonia, the ALJ found that the condition did not cause more than minimal limitations in basic work-related activities and did not exist during the period at issue. (T 21, 472)   Plaintiff asserts that it is logical to conclude that dystonia existed prior to this evaluation because Dr. Hauser opined that Plaintiff's dystonia progressed over time following his head injury. (T 472)

An ALJ may consider evidence from before and after the relevant period that would have bearing on a claimant's disability during the relevant time. Douglas v. Comm'r of Soc. Sec. 486 F.

App'x 72, 75 (11th Cir. 2012) (per curiam) (unpublished).[4]   However, the ALJ is not required to conclude that Plaintiff's dystonia existed prior to his DLI.  See Mason v. Comm'r of Soc. Sec., 430 F. App'x 830, 832 (11th Cir. 2011) (per curiam) (unpublished) (finding that a treating physician's retrospective diagnosis is not entitled to deference unless corroborated by contemporaneous medical evidence).   Accordingly, the ALJ did not err in considering Plaintiff's dystonia.

## 2.      Cognitive Dysfunction

In support of his allegations of cognitive dysfunction, Plaintiff cites to  Dr. Mehta's January 2009 notes that were not in the record at the administrative level. Plaintiff also refers to Dr. Luciano's February 2009 examination that noted that Plaintiff was very confused and has to be redirected after every question (T 395) and Dr. Hauser's June 2009  diagnosis of cognitive and motor dysfunction. (T 472) Plaintiff also cites to the March 1, 2006 MRI revealing cerebral cortical atrophy that was somewhat advanced for Plaintiff's age, borderline ventriculomegaly, and mild cerebellar atrophy. (T 913)

However, the ALJ found the clinical findings of no sensory or neurological deficits inconsistent with Plaintiff's allegations of memory and comprehension limitations. (T 24)  In 2004, Dr. DeSousa reviewed an MRI of the Plaintiffs brain and reported that it appeared "unremarkable." (T 24)   Although Plaintiff's brain MRI in 2009 showed an old lacunar infarct, there were no acute intracranial abnormalities. (T 24, 343, 356)  Additionally, the ALJ observed that Plaintiff provided appropriate responses to questions at the hearing and testified at a nearly hour-long hearing without any breaks. (T 24-25)  After reviewing the medical evidence, the ALJ limited Plaintiff to a "non-fast

---

[4]  Unpublished opinions of the Eleventh Circuit of Appeals are not considered binding authority, however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

paced" and flexible work schedule. (T 21)   The ALJ properly considered Plaintiff's cognitive deficits.

**3.      Fibromyalgia**

Plaintiff alleges that the ALJ found fibromyalgia to be a severe impairment, but made no other statements or findings as to this impairment and did not mention his anxiety, chronic ataxia, myalgia, and myositis.   However, the ALJ stated that "[a]lthough there is only a single reference to fibromyalgia in the claimant's records . . . the undersigned grants the claimant the benefit of the doubt and considers the condition sufficiently severe as to limit basic work activities." (T 20, T 737)   The ALJ did not err in considering Plaintiff's condition of fibromyalgia, anxiety, chronic ataxia, myalgia, and myositis.   See Dyer, 395 F.3d at 1211.   Additionally, Plaintiff's failure to support his argument with specific record citations suggests the issue is abandoned.   See Callahan v. Barnhart, 186 F. Supp. 2d 1219, 1230 n.5 (M.D. Fla. 2002).   In other words, Plaintiff does not point to any evidence that fibromyalgia imposes additional work-related limitations other than those found by the Commissioner.

**4.      Complaints of Pain**

As to Plaintiff's complaints of pain, Plaintiff argues that the ALJ erred in stating that:

The records also indicate that after the date last insured, December 31, 2008, the claimant was diagnosed with disorders of the spine (Exhibits 3F, 4F, 7F, and 8F). Magnetic resonance imaging (MRI) tests revealed a small disc herniation of the thoracic spine at the T3-4 and T8-9 levels, a disc herniation in the lumbar spine at the L4-5 level, and a disc herniation with stenosis at the L5-S1 level (Exhibit 12F). The claimant's treating sources also annotated complaints of hip pain, right arm and right wrist pain, fatigue, left lower extremity pain and stiffness, lower back pain, right elbow pain, and left ankle pain with swelling (Exhibits 3F, 4F, 6F, 7F, and 8F) The above-described medically determinable impairments occurred after the date of the claimant's last insured status. Therefore, the undersigned finds that these impairments cannot be a basis for a finding of disability for the period at issue.

17

(T 21)

Plaintiff asserts that the ALJ's finding that these "impairments occurred after the date of the claimant's last insured status" requires remand because Exhibits 3F and 4F are dated prior to Plaintiff's DLI.  Plaintiff asserts that these records, as well as other evidence, show that these impairments occurred during the relevant period of alleged disability. Plaintiff cites progress notes from Dr. Moss from 2006 through 2008 documenting Plaintiff's complaints of pain.

Exhibit 3F contains treatment records from Dr. DeSousa from May 19, 2004 through October 3, 2006 focusing on complaints concerning Plaintiff's right hand and wrist. (T 290-301) These treatment records also include a  March 1, 2006 MRI of the cervical spine showing abnormal results with straightening of the curvature, spondylotic changes most pronounced at C3-4, evidence of bilateral forminal narrowing, slightly worse on the left than the right. (T 299, 914-15)  Exhibit 4F contains records from Dr. DeCosmo on September 4, 2008 noting point tenderness and muscle spasms in the cervical, thoracic, and lumbar paraspinal muscles. (T 302-07)

Exhibit F contains Dr. Mitchell's diagnosis of DVT in February 2009. (T 326-335) Exhibits 7F and 8F are February 2009 records from Dr. Mehta regarding DVT, PE, and MRIs. (T 336-362) In February 2009, an MRI of Plaintiff's pelvis and bilateral hips showed no fracture or dislocation, no significant hip joint space narrowing, and no acute abnormalities. (T 338, 359)  An MRI of the cervical spine showed very mild DJD. (T 358) An MRI of the lumbar spine revealed straightening of the lumbar spine secondary to spasm or positioning or ligamentous injury and mild disc space narrowing at L5-S1. (T 360)  Exhibit 12F contains the April 2009 MRI of the thoracic spine revealing a small left central disc herniation at T3-4 and a right central disc protrusion at T8-9 and the April 2009 MRI of the lumbar spine showing a L4-5 and L5-S1 disc herniation with spinal

18

stenosis. (T 407, 412-13)

The ALJ did not reversibly err in citing Exhibits 3F and 4F in his discussion of Plaintiff's spine disorders and complaints of pain.  Further, the records cited by Plaintiff documenting Plaintiff's impairments and complaints of pain do not provide a basis for remand.  The mere existence of impairments does not reveal the extent to which the impairments limit a claimant's ability to work or undermine the ALJ's determination in that regard.  See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (per curiam). While Plaintiff refers these impairments and subjective complaints, he fails to show that he is more limited than found by the ALJ during the relevant period of disability. Accordingly, these issues do not warrant remand.

## IV.     Assignment of Weight to the Treating Physician's Opinion

Plaintiff argues that the ALJ erred in discrediting the opinion of Plaintiff's treating physician, Dr. Moss. Specifically, Plaintiff asserts that the ALJ failed to specifically cite to other evidence of record  contradicting Dr. Moss's opinion other than  the opinions of the non-examining medical consultants, Dr. Moss's opinion is consistent with the opinions and treatment records of Dr. DeCosmo, Dr. Hauser, and Dr. DeSousa, and the ALJ substituted her opinion for that of a medical expert because she disagrees with Dr. Moss's treatment methods.

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefore.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) (citation omitted). Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982) (citation omitted).  "Good cause" exists when (1) the treating physician's opinion is not bolstered by the evidence, (2) the

evidence supports a contrary finding, or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). Rejection of a treating physician's opinion must be supported by clearly articulated reasons. Id. at 1241. However, it is for the ALJ, not the courts, to resolve possible inconsistencies in the evidence as long as substantial evidence supports the ALJ's decision. Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996) (citation omitted).

The ALJ may discount a treating physician's opinion if it is not well-supported by medical evidence or is inconsistent with the record as a whole. Crawford, 363 F.3d at 1159-60. Further, the weight afforded a physician's conclusory statements regarding a claimant depends upon the extent to which the statements are supported by clinical or laboratory findings and are consistent with other evidence of record. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam) (citation omitted).

The ALJ determined that Dr. Moss's opinions were "grossly overstated" and "in sharp contrast with the other evidence of record." (T 25) For example, the ALJ noted that Dr. Moss restricted Plaintiff from performing even low stress jobs, from walking a single city block, sitting less than twenty minutes at one time, standing for less than five minutes at a time, standing or sitting no more than two hours in an eight-hour workday, lifting less than ten pounds, and never looking up or down or turning his head to the left or right. (T 25-26)

Regarding Dr. Moss's psychological assessments, the record contained no evidence of Plaintiff complaining of depression or anxiety, including at the administrative hearing. (T 26) The ALJ noted that "Dr. Moss is an orthopedic surgeon and his opinion appears to rest at least in part on an assessment of impairments outside his area of expertise" and his "opinions were inconsistent

with what one would expect if [Plaintiff] truly had such limitations." (Id.) Dr. Moss's treatment was "conservative in nature and mostly consisted of muscle relaxants and anti-inflammatory injections" and "that if Dr. Moss reasonably believed that the claimant had such severe limitations, he would have implemented those restrictions much earlier and recommended some form of surgery." (Id.)

The ALJ found that Dr. Moss consistently rated Plaintiff at 100% range of motion in the cervical and lumbar spine and occasionally rated Plaintiff at 80 or 90% range of motion. (Id.) Dr. Moss's records consist of little, if any, evidence that Plaintiff was anything less than fully neurologically and psychologically intact. (Id.) Throughout the records, Dr. Moss observed that Plaintiff's gait as antalgic, but with intact deep tendon reflexes in the lower and upper extremities and an ability to heel, tiptoe, and tandem walk without difficulty. (Id.) Based on these inconsistencies, the ALJ assigned Dr. Moss's opinion little weight. (Id.)

Therefore, after extensively discussing Dr. Moss's opinion and clinical findings, the ALJ properly discredited Dr. Moss's opinion because it was inconsistent with the record as a whole and Dr. Moss's own treatment records. The ALJ specifically cited to Dr. Moss's treatment records in discrediting Dr. Moss's opinion and extensively discussed throughout his opinions the remaining evidence contradicting Dr. Moss's opinion. The ALJ provided good cause and did not err in explaining his reasons to discredit Dr. Moss's opinion.

Plaintiff's assertion that the ALJ substituted her opinion for that of a medical expert in her assessment of Dr. Moss's treatment methods does not provide a basis for remand, either. An ALJ may consider conservative medical treatment in assessing a claimant's disability. See Wolfe, 86 F.3d at 1078 (affirming the ALJ's decision to discredit the claimant's testimony based in part on conservative nature of treatment for spinal, heart, and thyroid conditions). The ALJ did not solely

rely on Plaintiff's conservative treatment, but provided other sufficient reasons for discrediting Dr. Moss's opinion.

Plaintiff contends that Dr. Moss's April 2009 opinion is consistent with the opinions and treatment records of Dr. DeCosmo, Dr. Hauser, and Dr. DeSousa. However, these physicians did not provide limitations on Plaintiff's ability to perform work-related activities. Additionally, their treatment records do not support Dr. Moss's April 2009 opinion severely limiting Plaintiff's ability to perform basic work activities. Accordingly, substantial evidences supports the ALJ's decision to discredit Dr. Moss's opinion.

## V.    Non-Examining State Agency Opinions

Plaintiff argues that the ALJ erred in crediting the opinions of a non-examining SDM, Mr. Cook, and a non-examining physician, Dr. Ravipati, over the opinion of Plaintiff's treating physician, Dr. Moss. Plaintiff argues that the ALJ erred in affording considerable weight to Mr. Cook's RFC assessment because Mr. Cook is a non-examining consultant and the ALJ mistakenly found that he conducted an examination.

In assessing medical evidence in a disability case, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) (citation omitted). The opinion of a non-examining, reviewing physician standing alone does not constitute substantial evidence. Sharfarz, 825 F.2d at 280 (citation omitted). However, it is not improper for an ALJ to consider the reports of consulting physicians, as long as the opinion of the treating physician is accorded proper weight. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam). If the ALJ articulates good cause for discrediting the treating and examining physicians' opinions, an ALJ is entitled to rely on

a non-examining physician's opinion when it is consistent with the medical record and the treating and examining physicians' underlying clinical findings. <u>Flowers v. Comm'r of Soc. Sec.</u>, 441 F. App'x 735, 742-43 (11th Cir. 2011) (per curiam) (unpublished).

Assigning the state agency opinions "considerable weight," the ALJ noted that their findings were consistent with Plaintiff's record as a whole and, as the consultants noted in their assessments, various issues existed as to Plaintiff's credibility. (T 27) In evaluating Plaintiff's ability to ambulate, the ALJ noted that Mr. Cook "conducted an examination of [Plaintiff] and observed that he was able to 'walk independently' [and] had normal strength and range of motion throughout." (T 24) The ALJ discussed further evidence of Plaintiff's ability to ambulate contradicting Plaintiff's testimony that he is unable to walk. (<u>Id.</u>)

Although Plaintiff is correct that the ALJ mistakenly found that Mr. Cook performed an evaluation and his opinion is not entitled to any weight, the ALJ's mistake is harmless error. The ALJ did not rely solely on the SDM's opinion. <u>Cf.</u> <u>Siverio v. Comm'r of Soc. Sec</u>., 461 F. App'x 869, 871-72 (11th Cir. 2012) (per curiam) (unpublished) (holding that the ALJ erred in relying solely on a SDM's opinion without substantial evidence remaining in the record to support the RFC assessment). In fact, the ALJ's RFC assessment is more consistent with the more restrictive opinion of Dr. Ravipati, an acceptable medical source. <u>See</u> <u>Castel v. Comm'r of Soc. Sec.</u>, 355 F. App'x 260, 265 (11th Cir. 2009) (per curiam) (unpublished) (noting that an ALJ did not reversibly err by mistaking a SDM's opinion for that of a physician when he accorded more weight to an acceptable medical source's opinion). The ALJ did not reversibly err in assessing Mr. Cook's opinion.

Additionally, Plaintiff contends that the ALJ erred by giving greater weight to the assessment of Dr. Ravipati, a non-examining physician, than to the opinion of Dr. Moss, Plaintiff's treating

physician.  As previously discussed, the ALJ demonstrated good cause for discrediting Dr. Moss's

April 2009 opinions.  Furthermore, Dr. Ravipati is an acceptable medical source who based his RFC

assessment on the record as a whole. (T 461)  The ALJ fully considered the record and properly

found Dr. Ravipati's opinion consistent with the record as a whole.

Plaintiff asserts that Dr. Ravipati's opinion is unreliable because Dr. Ravipati wrote on June

13, 2009 in a note that: "I must have copied the RFC of a different claimant on to this case. I will

be out of the office from 6/15-6/22. As soon as I come back I will take care of the matter." (T 458)

However, Dr. Ravipati's RFC assessment is dated June 29, 2009, which is after he returned to the

office. (T 466)  There is no reason to believe that the physician did not obtain the correct records

after returning to the office.

The ALJ did not reversibly err in crediting the opinions of Dr. Ravipati or Mr. Cook.

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled during the

relevant period. (T 24)  It is for the ALJ to resolve any inconsistencies in the evidence, so long as

substantial evidence supports the ALJ's decision. See Wolfe, 86 F.3d at 1079.

## VI.    Plaintiff's Credibility

Plaintiff submits that the ALJ erred in discrediting Plaintiff's subjective complaints of pain

and other symptoms based on Plaintiff's extreme descriptions of the severity of his limitations.

The Eleventh Circuit has established a three-part "pain standard" to use when a claimant

attempts to establish disability through testimony of pain or other subjective symptoms.  Holt v.

Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  A plaintiff must show: (1) objective

medical evidence of an underlying medical condition; and either (2) the objective medical evidence

substantiates the severity of the pain from the condition; or (3) the objectively determined medical

24

condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).

Where an ALJ declines to credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam).  A clearly articulated credibility finding that is substantially supported by the record will not be overturned.  Id. at 1562 (citation omitted).  A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  Id. (citation omitted).

At the administrative hearing, Plaintiff alleged severe difficulties bending, twisting, balancing, rotating, and moving and lifting his arms. (T 44, 48, 50, 53-55, 58, 66)  Plaintiff testified that his body is like a statute and he is unable to stand without an assistive device. (T 44, 59, 67)  Plaintiff testified that he can grip a pen, but cannot write. (T 74-75)  Plaintiff stated he has great difficulty showering, dressing himself and using the restroom, cannot hold silverware due to having no strength in his hand, and cannot bend over to retrieve items from the refrigerator. (T 67, 68, 76)  He received cortisone injections from Dr. Moss to help loosen his muscles for a short period of time. (T 63)  Plaintiff took Lorazepam, muscle relaxers, and aspirin, but did not take pain medications in 2007 or 2008. (T 73)  Plaintiff testified that he watched television and read, but was unable to retain concentration and could only partially follow instructions. (T 70, 76-77)

The ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms not credible to the extent they are inconsistent with the RFC assessment. (T 23)  Remarking that the medical evidence did not support Plaintiff's alleged limitations, the ALJ found that Dr. Moss's treatment records between February 2007 and December

2008 showed that Plaintiff frequently had 100% range of motion in the cervical and lumbar spine, with an occasional limitation to 80%. (Id.)  Diagnostic imaging from February 2009 revealed only mild disc space narrowing at the L5-S1 level, no acute abnormalities or significant joint space narrowing in his hips, and very mild DJD of the cervical spine. (T 23, 358-60)   These findings, according to the ALJ, were inconsistent with Plaintiff's testimony that he could not bend over to retrieve items from the refrigerator. (T 23, 67) The ALJ found no evidence that between February 2007 and December 2008 Plaintiff was prescribed a walker or required an assistive walking device. (T 24)  The ALJ further reasoned that Plaintiff's descriptions of the severity of his limitations were so extreme that they appeared inherently implausible and severely undermined his credibility. (T 23, 44-83)

The ALJ stated that, "[o]ne could reasonably argue that if the claimant really experienced such severe pains and limitations as alleged, he would have taken some form of prescribed medication for relief when he did not have to drive.  In sum, the claimant's allegations of back pains and limitations are disproportionate to the mild medical findings and are not credible." (T 24)  The ALJ noted that Plaintiff was able to provide appropriate responses to questions at the hearing, which contradicted his allegations of difficulties with memory and comprehension. (T 24, 44-83) Plaintiff's ability to endure and testify at a nearly hour-long hearing, without any breaks also undermined his allegation of not being able to focus or sit for any amount of time. (T 24)

Although Plaintiff cites Dr. Eastridge's report in support of his subjective complaints,  this report was not in the record at the time of the ALJ's decision. Plaintiff alleges that he suffers from dystonia and chronic ataxia and that his earning pattern is consistent with his statements that his symptoms progressively worsened after the 2005 automobile accident, but these records do not

confirm that he was as severely limited as he claimed during the relevant time period.  Considering

the evidence of record, substantial evidence supports the ALJ's credibility evaluation of Plaintiff's

testimony.  See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

## VII.    Hypothetical Question to the VE

Plaintiff argues that the ALJ failed to include all of Plaintiff's limitations in the hypothetical

question  to  the  VE,  including  limitations  from  his  weakness  in  his  right  hand  and  wrist,

fibromyalgia, DVT, and cognitive dysfunction. Plaintiff cites the VE's testimony that if the ALJ

credited Plaintiff's testimony that he is incapable of writing and lacks bilateral manual dexterity,

Plaintiff could not perform the jobs in the national economy identified by the VE.

 If the ALJ determines that a claimant cannot return to his past relevant work, the burden

shifts to the Commissioner to show that the claimant can perform other jobs that are significant in

number in the national economy.  Gibson v. Heckler, 762 F.2d 1516, 1518 (11th Cir. 1985) (per

curiam).  The ALJ can satisfy this burden of providing evidence through VE testimony of other work

in the national economy that a claimant can perform.  Phillips, 357 F.3d at 1240.  A VE's testimony

constitutes substantial evidence if the ALJ poses a hypothetical question that comprises all of the

claimant's impairments.  Wilson, 284 F.3d at 1227.  However, the ALJ is only required to include

the limitations the ALJ finds supported by the evidence in the hypothetical question to the VE.  See

Crawford, 363 F.3d at 1161.  An ALJ may properly omit limitations that either are not supported

by the medical evidence or are relieved by medication.  See Ingram, 496 F.3d at 1270.

The ALJ asked the VE whether a hypothetical claimant encompassing all of Plaintiff's

limitations could perform work in the national economy. (T 85, 87) The VE testified that such an

individual could perform work as a gate guard, a laundry sorter, and a price marker. (T 87) If

Plaintiff is unable to write and lacks bilateral dexterity, the VE stated that Plaintiff would not be able to perform these jobs. (T 95-96)  Based on the VE's testimony, the ALJ determined that there were a significant number of jobs in the national economy that Plaintiff could perform. (T 28)

The ALJ correctly determined that Plaintiff's testimony regarding his functional limitations was not supported by the medical evidence.   As such, the ALJ was not required to include these limitations in the hypothetical to the VE.   The ALJ properly relied on the VE testimony in determining that Plaintiff was not disabled.   The ALJ's decision is supported by substantial evidence.

## VIII.   Full and Fair Hearing

Plaintiff argues that the ALJ's decision improperly implies that Plaintiff's counsel coached Plaintiff during the hearing, reflects an inconsistent finding regarding DVT, characterizes a non-examining consultant as an evaluator, and makes unsupported credibility findings.

A claimant is entitled to a hearing that is both full and fair.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. Id.  The ALJ has a duty to "develop a full and fair record" and "must carefully weigh the evidence, giving individualized consideration to each claim that comes before him." Id. at 1401.  "Because of the deferential standard of review applied to his decision-making, the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits."  Id.  Therefore, "[t]he impartiality of the ALJ is thus integral to the integrity of the system." Id.

The issues raised by Plaintiff did not deny Plaintiff a full and fair hearing.  As discussed previously, the ALJ's characterization of the non-examining consultant as an evaluator and her

reliance on this opinion do not warrant remand.  Additionally, her decision to discredit Plaintiff's testimony as to the severity of his functional limitations is supported by substantial evidence.

In finding Plaintiff's DVT severe, the ALJ gave Plaintiff the benefit of the doubt that DVT symptoms may have existed prior to the formal diagnosis. (T 20)  The ALJ also states that Plaintiff's DVT occurred after his DLI and "cannot be a basis for a finding of disability for the period at issue." (T 20-21)  However, the ALJ's decision as a whole is consistent with his findings regarding DVT. The ALJ discussed Plaintiff's history of DVT and treatment for this condition. (T 20-21, 23-24) The ALJ's RFC finding reflects limitations involving Plaintiff's lower extremities, and Plaintiff has not shown that he has any additional limitations from his DVT than found by the ALJ.  (T 21)  The ALJ's findings are supported by the medical evidence.  Any inconsistent statement by the ALJ regarding Plaintiff's DVT is harmless.

Additionally, the ALJ found that Plaintiff changed his testimony regarding the amount of weight he can lift upon questioning by his counsel. (T 25) The ALJ stated that "this change, at the cuing of his representative, brings into question the claimant's credibility." (Id.)  This observation does not suggest bias against Plaintiff or his counsel to warrant remand.

In sum, Plaintiff has not shown bias by the ALJ to warrant a reconsideration of his application for benefits.

### Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles.  The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2)     The Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date: January 30, 2013**

ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).